## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| : | **Jury Demand** |
| **PATRICIA MARTENS,** | |
| **PSC 561, Box 6729, FPO, AP 96310** | |
| **Plaintiff,**    : | **Civil Action** |
| : | |
| **v.**    : | **No.** |
| : | |
| **CARLOS DEL TORO, Secretary,**    : | |
| **U.S. Department of the Navy**    : | |
| **United States Navy** | |
| **1000 Navy Pentagon** | |
| **Washington, DC 20350-1200** | |
| : | |
| **Defendant.**    : | |

## COMPLAINT (EMPLOYMENT DISCRIMINATION AND RETALIATION, HARASSMENT AND HOSTILE WORK ENVIRONMENT)

This is an action alleging national origin discrimination in employment and retaliation for the exercise of her protected rights by PATRICIA MARTENS, a civilian employee of the United States Navy.

### Jurisdiction

1.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. §2000e-16(c) which provides, in pertinent part, that a federal employee may obtain judicial review and a trial *de novo* in a federal district court from a judicially reviewable action where *Title VII* discrimination has been alleged.

### Venue

2.     The United States District Court for the District of Columbia is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(e), in that the Agency's headquarters is located in this judicial district.

### Parties

*3.*      Plaintiff, Patricia Martens (Martens), is a citizen of the United States and a current resident of Iwakuni, Japan, PSC 561 Box 6729, FPO, AP 96310. At all times relevant to this Complaint, she was an employee within the meaning of *Title VII* of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

4.      Defendant, Carlos Del Toro, Secretary, U.S. Department of the Navy ("Navy," or "Agency"), is the duly appointed and acting official charged with the administration of laws and implementing regulations, instructions and directives affecting the Agency and its organizational components and its employees concerning anti-discrimination in employment, including, but not limited to, job discrimination under *Title VII* of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; and at all times relevant to this Complaint, was an employer within the meaning of that law.

Exhaustion of Administrative Remedies

5. Plaintiff Martens has exhausted all available administrative remedies. This action is being filed within the prescribed time following final agency action.

**Relevant Facts**

6.      At all times relevant hereto, Plaintiff Martens was the Chief of Non-Appropriated Funds (NAF) Human Resources at Marine Corps Community Services (MCCS) Iwakuni.

7.      MCCS is an organizational sub-component of the Marine Corps Installations Pacific (MCIP). The aforesaid entities are under the umbrella of The Department of the Navy (Navy or Agency).

8.      On March 20, 2020, Plaintiff Martens alleged that the responsible management officials discriminatorily hampered and interfered with her ability to fully discharge her

2

responsibilities as the NAF HR Chief.

9.      On May 27, 2020, Plaintiff Martens was a signatory to a written agreement, which included, in part, her agreement to withdraw her discrimination claim in exchange for certain future promises.

10.     On June 1, 2020, PM's supervisor, the Director of MCCS, John Kasperski, was notified by his supervisor (Colonel Lewis, Commanding Officer of Marine Corps Installation Pacific) that MCCS Iwakuni was subject to a detailed investigation by MCIPAC.

11.     Martens learned that - under the guise of a management inquiry and investigation into financial and accounting operations of the Iwakuni Marine Corps Exchange (MCX) and its inventory and financial affairs, such as the Non-Appropriated Fund (NAF) Finance and Accounting operations; the NAF Supply, Inventory, and Warehousing operations; the HAP Internal Control operations; and the NAF Procurement - the NAF HRO function had been the primary focus of the investigation, notwithstanding that NAF HRO had virtually nothing to do with the discrepancies and the shrink at the MCX, as identified in the 1 June 20 memorandum. **Exhibit 1** is a copy of the 1 June 2020 Memorandum authorizing the investigation.

12.     Martens filed a request to amend her complaint (**Exhibit 3**) on September 14, 2020, and identified three additional claims therein which post-dated the event described in her Formal complaint. One of the three claims was a non-selection claim which Martens is pursuing as a separate administrative matter.

13.     On September 18, 2020, the Agency, through William L. Bryson, MCIPAC EEO Deputy Director, issued a memorandum entitled Notice of Acceptance of Formal Complaint.

**Exhibit 4**.

14.     On November 25, 2020, Mr. White issued a memorandum on November 25, 2020, by which Martens' entire complaint was dismissed. (**Exhibit 7**).

15.     Plaintiff Martens was subjected to discrimination and harassment based on her national origin (Venezuelan) and in retaliation for her prior EEO activity, including, but not limited to, DON EEO Complaint No. 20-62613-01819, and as more fully set forth in **Exhibit 2**, **Exhibit 3**, **Exhibit 5**, **Exhibit 6**, **Exhibit 8**, and **Exhibit 10**. These discriminatory and retaliatory acts and omissions include, but are not limited to the following:

   a.     beginning June 1, 2020, under the purported justification of a management inquiry and investigation into financial and accounting operations, Martens had been singled out and targeted for investigation under the guise of investigating the shrink of the Iwakuni Marine Corps Exchange (MCX) - notwithstanding that NAF HRO had nothing to do with the discrepancies and the shrink at the MCX (as identified in the 1 June 20 memorandum);

   b.     in June, 2020, during the course of the investigation, six investigators spent tens of manhours over many days meticulously scrutinizing all MCCS Iwakuni Human Resources office records, with very little time, resources or manpower expended by the agency in conducting an investigation into the matters identified by the 1 June 20 memorandum.

   c.     MCIPAC MCCS ER Supervisor Amanda Davis entered the Iwakuni PeopleSoft to look at Martens's job data module and accessed Martens's personal information without having a need-to-know basis, thereby unlawfully violating Martens's right to privacy and confidentiality.

   d.     On August 4, 2020, DoD IG Investigator Stephen Johnson emailed Plaintiff Martens' supervisor MCCS Director John Kasperski to falsely inform him that Martens refused to participate in and cooperate in an IG investigation. Investigator Johnson's false communication to Patricia Martens's supervisor, Kasperski, portrayed her in a negative light and was implicitly intended to encourage her supervisor to unjustly discipline her - and negatively impact her relationship with her supervisor.

4

e.      On 30 September 2020, William Bryson refused to process Patricia Martens' request for pre-complaint counseling.

f.      On 1 October 2020, William Bryson misrepresented himself as a neutral and unbiased party relating to a prior claim of Title VII discrimination that Martens' had raised in March, 2020. William Bryson, Former MCIPAC EEO Deputy Director, intentionally conspired with Peter Dawson, MCIPAC Chief of Staff, the Navy's representative at the ADR conference, to falsely assert that the a written ADR agreement between Martens and the Navy had been fully executed by the parties on 27 May 2020. On 5 June 2020, Patricia Martens had informed William Bryson that she was retracting her written offer to settle she had made during an ADR conference. William Bryson knew that Peter Dawson, the settlement authority, had not signed the written ADR agreement before 5 June 5 2020, yet William Bryson, as a purported neutral, unbiased and disinterested Agency EEO official, stated that Patricia Martens was bound by the unexecuted ADR agreement. William Bryson has refused to honor Patricia Martens' request for proof that an ADR agreement was executed on or before 5 Jun 2020. Peter Dawson and William Bryson have conspired with each other, as part of an ongoing pattern of discrimination and harassment related to Patricia Martens' ongoing claims.

g.      On 2 October 2020, William Bryson intentionally and willfully violated EEOC regulations by refusing to provide Patricia Martens with the notice of final interview concerning her EEO counseling request which Martens initiated on 20 March 2020. William Bryson knew that the 13 May 2020 ADR never resulted in a settlement. William Bryson's refusal to issue a notice of final interview and right to file a formal complaint based on the allegations Patricia Martens' made on 20 March 2020 has caused delays in the processing of her EEO claim that continues to be prolonged.

h.      On 06 October 2020, MCCS Butler's Security Supervisor Becca Haynes undermined Patricia Martens' authority by contacting Patricia Martens' subordinate to question her decision to rescind a job offer to a candidate. Becca Haynes has no right or business to question MCCS Iwakuni's decision. In addition, as the Chief of Human Resources for MCCS Iwakuni, Patricia Martens is the local adjudicator for her Command. Mrs. Haynes' intrusion into Patricia Martens' department was without authorization and was carried out with knowledge and acquiesce of Neil Carrington, Security Manager and Peter Dawson.

i.      On 9 October 2020, Neil Carrington intentionally did not exercise his due diligence as security manager of keeping Patricia Martens informed of security

training. MCAS flew 9 individuals to train in Okinawa to obtain the security manager (SECMAN) certification. Neil Carrington intentionally and willfully omitted this important information from me. As a result of his actions, he has interfere with Patricia Martens' ability to timely provide training to her staff, so they could obtain the Security Manager certification. His actions have negatively impacted on efforts to reduce the administrative backlog of the security files. In addition, without this certification, employees in security won't be granted access to security platforms such as JPAS, DISS, and NP2.

j.   On 15 October 2020, Neil Carrington disseminated and conveyed negative information of Patricia Martens' character which he broadcasted by email to individuals, some of whom did not have a need to know. The individuals who received the email were John Kasperski, Edward S. Hutsell, Jerry W. Bosken, LtCol Joshua H. Nelson, Jessica P. Huskey, Capt Douglas M. Murray, Cameronedward B. Hood, Mitchell E Daniels, Sr. and Peter M. Dawson. The email contained harshly pejorative information about Patricia Martens' character, honesty and loyalty and her entitlement to retain access to sensitive information. The damaging language in the email was as follows: "Based on the below information Patricia Martens have removed Ms. Martens JPAS/DISS and SWFT access effective immediately. Patricia Martens have also placed an initial incident report to the DoDCAF and also removed Ms. Martens local secret access pending a final report. A final incident report will not be submitted to the DoDCAF until Command administrative actions are complete." Neil Carrington's email also included information from the IG. Neil Carrington never copied Patricia Martens on this email and never informed her of its contents. Neil Carrington's actions have caused Patricia Martens to suffer extreme mental anguish - especially over her concern that her reputation has been irrevocably tarnished, and her concern that she would lose her job.

k.   15 October 2020, Neil Carrington suspended Patricia Martens' access to the following security platforms: DISS, SWFT+ and JPAS. Patricia Martens' access to these platforms was essential for her to perform certain critical functions required of her in her position. He suspended Patricia Martens' access without having knowledge of the specific factual findings of the IG.  Patricia Martens have never been informed of the specific findings or the facts supporting the findings.  Patricia Martens have been denied copies of the IG report or any portion of the IG report, even the two sworn statements she gave to the IG investigators. Neil Carrington violated written policy by suspending Patricia Martens' access without first informing the Command Officer, MCCS Director, and Chief of staff. Furthermore, Neil Carrington retaliated against Patricia Martens by violating her privacy rights when he informed persons, who did not have a need to know, of her access suspension. Before Neil Carrington suspended Patricia Martens' access, the IG had shared some information with him

6

concerning the substance of the IG investigation. When Neil Carrington actually removed Patricia Martens' access, he knew that IG decision to sustain charges against her was not supported by the evidence. Peter Dawson knew that Neil Carrington removed Patricia Martens' access.

l.     15 October 2020, Neil Carrington, recklessly, with malice and with the intention of impugning Patricia Martens' loyalty, honestly and integrity, placed an initial incident report to the DoDCAF concerning the IG "findings" against me, without obtaining and reviewing the facts supporting the "findings."

m.     15 October 2020, or shortly before, Jessica Huskey, Lead IG investigator, informed Neil Carrington that, as a result of an IG Investigation she was conducting where Patricia Martens was identified as the target, two of the four allegations against her had been sustained. To Patricia Martens' knowledge, Ms. Huskey, who was well aware of Patricia Martens' EEO activity, when she conducted an interview of her on July 9, 2020. At the time of her interview of Martens, Ms. Huskey admitted she was aware that Patricia Martens voluntarily had given an earlier statement under oath on February 13, 2020 on the identical subject matter and that, because of an administrative error, the allegations against Patricia Martens were "redrafted" and she had to be questioned again. Patricia Martens was asked almost the same questions she was asked in the first interview. Ms. Huskey's investigation, on July 9, 2020, was a "hatchet job," was overtly slanted and biased and where her conclusion was preordained. Ms. Huskey did not provide Neil Carrington with essential factual information to support the trumped up conclusions she reached, but recommended, on or about 15 October 2020, after she prepared her IG report, that immediate and harsh action be taken against Patricia Martens to suspend her access. Ms. Huskey did not provide to Neil Carrington with a copy of the Command Inspector General Report IRT IGMC Case #21817, or essential portions of the report containing factual evidence, such as sworn statements of the persons questioned by the investigators, all notes taken by the investigators, all logs maintained by the investigators, all documents obtained by the investigators in the course of the investigation, all records relating to persons interviewed or questioned by the investigations, all email communications relating, in any way, to the investigation, from inception to conclusion, etc. One of the two sustained charges concerned allegations against Patricia Martens that she intentionally intimidated an employee into accessing her JPass and e-Qip screens for her to view, at times when she didn't have access privileges and, therefore, could not possibly have accessed the JPass and e-Qip screens. This is clear and irrefutable evidence confirming that Patricia Martens was viscously and unjustifiably maligned and wrongfully accused by Ms. Huskey of violating security regulations by Patricia Martens' alleged unauthorized access to security platforms.

7

n.    The Agency has refused to process Martens' claim involving the alleged retaliatory backdating of the ADR settlement agreement, to foreclose Martens from pursuing her discrimination claim. William Bryson, the deputy EEO officer, has not simply negligently performed his duties in his capacity as deputy. He engaged in willful, intentional misconduct to prevent Patricia Martens from exercising her rights under the procedural regulations by thwarting her efforts to go forward with her formal discrimination complaint and by explicitly, through his refusal to acknowledge the fact that, on June 5, 2020, when Patricia Martens withdrew her offer of settlement, the settlement agreement had not been fully executed. His inactions were intentional and deliberate. He knew that Chief of Staff Peter Dawson back-dated his signature to the settlement agreement, as he routinely signed documents electronically. Peter Dawson and Neil Carrington, MCIPAC Security Manager were also complicit in the retaliatory acts against me.

As a direct and proximate result of the Defendant's violation of Title VII, Plaintiff Martens suffered, among other things, lost wages, lost benefits, and lost interest on earnings, investment opportunities, and retirement benefits; mental anguish, anxiety, inconvenience, and humiliation.

WHEREFORE Plaintiff Martens prays this Court to:

1. grant judgment in her favor against Defendant;

2. grant her declaratory and injunctive relief;

3. award her compensatory damages in an amount to be shown at trial;

4. award her reimbursement of the attorneys' fees and costs she has expended in bringing and litigating this matter; and

5. grant her such other and further relief as justice may require.

6

s/ *Dennis L. Friedman*
DENNIS L. FRIEDMAN, ESQUIRE
Attorney for Plaintiff
1515 Market Street, Suite 1650
Philadelphia, PA  19102
(215) 567-4600
APPLICATION FOR ADMISSION TO BE FILED

s/ *Thomas J. Gagliardo*
Thomas J. Gagliardo, Esq
D.C. Bar No. 192575
Of Counsel
Gilbert Employment Law, P.C.
1100 Wayne Avenue, Suite 900
Silver Spring, Maryland 20910
301 608 0880 FAX 301 608 0881
Tgagliardo-efile@gelawyer.com